**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-1714
_____

In re:  Bayside Prison Litigation

JEFFREY MORTON,

<u>Appellant</u>

v.

BAYSIDE STATE PRISON
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civ. No. 97-05127)
Honorable Robert B. Kugler, District Judge
_____

Submitted under Third Circuit LAR 34.1(a)
April 11, 2012

BEFORE:  HARDIMAN, GREENAWAY, JR., and GREENBERG, <u>Circuit</u> <u>Judges</u>

(Filed: April 17, 2012)
_____

OPINION OF THE COURT
_____

GREENBERG, <u>Circuit</u> <u>Judge</u>.

        This matter comes on before this Court on an appeal by plaintiff Jeffrey Morton

from an order entered on February 14, 2011, denying his motion under Federal Rule of

Civil Procedure 60(b) to vacate a District Court order entered May 18, 1999, dismissing with prejudice his case arising from his incarceration at the Bayside State Prison in New Jersey. The Court entered the May 18, 1999 order because Morton twice failed to submit a pretrial memorandum within the time fixed for its submission. After entry of the February 14, 2011 order, Morton moved for its reconsideration but the Court denied that motion with an order and accompanying opinion entered July 21, 2011. The Court in its July 21, 2011 opinion set forth the background of this matter at length but we nevertheless summarize its pertinent history.[1]

This case arose from the homicide of a corrections officer on July 30, 1997, at the Bayside State Prison, an event that led corrections officials to take protective measures which included an inmate lockdown. These measures triggered responsive litigation from certain inmates that Morton describes as "a fourteen year saga involving fourteen jury trials, numerous appeals, and hundreds of claims referred to and heard (by consent) before a Special Master in streamlined proceedings." Appellant's Br. at 3. Morton initiated his participation in this massive litigation by the rather commonplace step of filing a pro se complaint on March 2, 1998, in the District Court, docketed as Civ. No. 97-5609, in which he complained that he had been assaulted during the lockdown. Morton moved for the appointment of counsel but the Court denied that motion on May 8, 1998. Other inmates also filed individual cases as well as a class action arising out of the corrections officials' reaction to the killing. To manage these multiple actions the

---

[1] Of course, the parties are familiar with the background of this case as there has been a great deal of litigation arising from the circumstances which led to Morton filing his complaint. See, e.g., White v. Fauver, 19 F. Supp. 2d 305 (D.N.J. 1998).

Court on December 31, 1998, entered an order consolidating the cases for the sole purpose of case management. The Court, however, at that time did not provide that the individual cases would lose their individual docket numbers though the cases to the extent consolidated were entitled "In Re Bayside Prison Litigation" and were docketed as Civ. No. 97-5127, the docket number previously assigned to the already pending class action. Finally, on April 9, 2001, the Court consolidated all the Bayside cases for all purposes under Civ. No. 97-5127.

There were individual proceedings in Morton's case both before and after the two orders for consolidation. As germane to this appeal, before the partial consolidation the clerk of the District Court notified Morton on August 4, 1998, to file a pretrial memorandum on or before November 4, 1998, but Morton did not do so. Subsequently, on February 18, 1999, after the partial consolidation but before the total consolidation, in keeping with the still individual status of the various cases, a magistrate judge directed Morton to file the pretrial memorandum by March 1, 1999, but again Morton did not do so. Consequently, the District Court dismissed Morton's action with prejudice on May 18, 1999, in an order docketed in Civ. No. 97-5609, Morton's individual case. So far as we can ascertain from the docket sheets, the Court did not send that order to any attorney as an attorney had not entered an appearance for Morton in Civ. No. 97-5609. The District Court has never vacated or otherwise disturbed the May 18, 1999 order.

After the District Court dismissed Morton's case, the defendants in Civ. No. 97-5127 moved to dismiss that case and, significantly, in their accompanying brief noted that the Court already had dismissed Morton's case at Civ. No. 97-5609. Nevertheless,

3

Morton did not move to reinstate his particular claim. On March 13, 2002, the Court denied in part and granted in part the defendants' motion to dismiss Civ. No. 97-5127, but the order it entered did not address the dismissal order in Morton's individual case which thus remained dismissed. Finally, on March 3, 2010, more than a decade after the Court had dismissed his action, Morton moved to reinstate his case and this motion led to the order of February 14, 2011, from which Morton now appeals.[2]

The District Court had jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343 and we have jurisdiction under 28 U.S.C. § 1291. We review the District Court's denial of the Rule 60(b) motion for an abuse of discretion. See Brown v. Philadelphia Housing Auth., 350 F.3d 338, 342 (3d Cir. 2003). There has been an abuse of discretion when a district court's decision is based on a "clearly erroneous finding of fact, errant conclusion of law or an improper application of law to fact." Oddi v. Ford Motor Co., 234 F.3d 136, 146 (3d Cir. 2000).

Morton indicates that the District Court erred "when it held [that] the motion [under Rule 60(b) was] untimely . . . solely [because of] the length of time since the original dismissal without consideration of the reasons for the delay" and that the Court erred when it refused to grant relief under Rule 60(b) "in light of the exceptional circumstances of this case." Appellant's Br. at 1.

---

[2] Morton correctly filed his motion to reinstate his claim in Civ. No. 97-5127 even though he had filed his claim in Civ. No. 97-5609 as all the Bayside cases had been consolidated for all purposes before he filed the motion. Consequently, the District Court filed the orders of February 14, 2011, and July 21, 2011, in Civ. No. 97-5127.

4

We recognize that the proceedings in this litigation have been very complex so that it is understandable that there has been confusion in the prosecution of the case. Yet Morton explains in his brief that "[i]n February of 2004, in response to an inquiry by Plaintiff's Counsel Defendants' counsel provided Plaintiff's counsel with a copy of the order entered by [the District Court] on May [18,] 1999." Appellant's Br. at 6-7. Nevertheless, even though the May 18, 1999 order dismissed his case neither Morton nor any attorney on his behalf filed a motion to have Morton's case reinstated until March 3, 2010. In these circumstances, and for the reasons that the District Court set forth in its July 21, 2011 opinion, we cannot say that the District Court abused its discretion when it entered the order of February 14, 2011, and adhered to that order on July 21, 2011.

The order of February 14, 2011, will be affirmed.